*121
 
 The Chief Justice now delivered the unanimous opinion of the Court.
 

 M‘Kean, Chief
 
 Justice.
 

 The defendants have moved, that the judgment rendered on the verdict in this cause, should be stayed on seven grounds ; and they have assigned one ground, upon which a new trial ought to be granted.
 

 A motion for a new trial should not be made, after a motion in arrest of judgment, unless in cases where the party had no knowledge of the fact, at the time of moving in arrest of judgment. For, by moving in arrest of judgment, you tacitly admit
 
 the
 
 verdict is good. 2
 
 Salk.
 
 647.
 
 Bull. N. P.
 
 326. and 1
 
 Burr.
 
 334. This is also settled by the 32d printed rules of this Court ; by which it is ordered, that no motion for a new trial shall be made, after a motion in arrest of judgment. I shall, therefore, in the first place, consider the reason offered for a new trial.
 

 It has been said, that the verdict was against evidence, because the Jury allowed interest on the sum demanded,
 
 £2663
 
 5 2, for two years and nine months more than they ought to have allowed, to wit, from the 4th of November, 1783, the date of the writing on which the action is brought, until the 23d of
 
 August,
 
 1786, when the writ was served; alledging that
 
 Lewis Lanoix,
 
 for whose use the information is exhibited, had by his own orders suspended the remission of the money to him during that period.
 

 This allegation is made on the deposition of
 
 John Sabloniere,
 
 who said, that Mr.
 
 James Lacaze
 
 arrived at
 
 Bourdeaux,
 
 in
 
 March,
 
 1784, and in a conversation with
 
 Lewis Lanoix,
 
 on the 9th of
 
 April,
 
 he, Mr.
 
 Lanoix,
 
 agreed to keep the bills of
 
 exchange,
 
 drawn by
 
 Lacaze
 
 and
 
 Mallet,
 
 upon
 
 Lacaze & Sons,
 
 for the sum due, and desired Mr.
 
 James Lacaze
 
 to write to Mr.
 
 Mallet,
 
 his partner in
 
 Philadelphia,
 
 not to remit the silver ; which was done ; and it did not appear in evidence, that any further demand was made until the 23d of
 
 August,
 
 1786, the day on which the writ in this cause was served.
 

 Upon this evidence, the Jury may have concluded, that Mr.
 
 Lanoix
 
 only
 
 excused
 
 the remittance of the silver during this time, merely as an indulgence to
 
 Lacaze
 
 and
 
 Mallet,
 
 and from an expectation that
 
 Lacaze & Sons
 
 would honor the bills ; but being disappointed, he ought to have interest for the money, as if no such indulgence had been granted; that the forbearance was at the instance of
 
 James Lacaze,
 
 and to oblige him, and that
 
 Lanoix
 
 should not be a loser by it. The Jury, perhaps, should not have allowed interest for the time it would have reasonably taken to remit the silver from
 
 Philadelphia
 
 to
 
 Bourdeaux, f
 
 or Mr.
 
 Lanoix.
 
 Be this as it may, it was a fact properly within the province of the Jury ; it was their duty to consider and determine it ; and, in such cases, tho’ legal interest is
 
 *122
 
 the usual measure of damages, for delaying payment, the Court cannot interfere. I am, therefore, of opinion, that a new trial ought not to be granted.
 

 With respect to the reasons in arrest of judgment, I think they may be comprized within three heads.
 

 1st. That it does not appear on the record, that the original cause, concerning the five casks of silver, was within the jurisdiction of the Court of Admiralty.
 

 2d. That if it was not,
 
 Anthony
 
 Fournie, master of the brigantine
 
 Count Durant,
 
 had no right, by the Common Law, to take such a writing, as the one now sued, from the defendants.
 

 3d. That, if such a writing could be taken by the Common Law, yet an action of debt upon it could not be maintained.
 

 1st. As to the first : It is recited in the information, by the Attorney General, that the libel in the Court of Admiralty was concerning five barrels of silver, saved from the
 
 wreck
 
 of the brigantine
 
 Count Durant,
 
 and put into the custody of the Marshall, and nothing more, except that salvage was decreed to
 
 Anthony
 
 Fournie, for saving it.
 

 Shipwreck is a matter of revenue. In a legal wreck, the goods must come on shore.
 
 Jetsam, flotsam
 
 and
 
 ligan,
 
 are not matters of revenue, and are cognizable in the Admiralty; but wreck is determinable by the Common Law. 1
 
 Blackst. Comm.
 
 290. 3
 
 Ibid. 160.
 
 5
 
 Co.
 
 106. 107.
 
 6 Vin.
 
 512
 
 pl.
 
 5.
 

 It is not alledged, that the silver was
 
 Jetsam, flotsam
 
 or
 
 ligan,
 
 or that the cause arose upon the high seas, or within the Admiralty, or Maritime jurisdiction; but, if we travel out of the record, the contrary appeared from the evidence; that the master
 
 (Fournie)
 
 had signed a bill of lading for it; that it was never out of his custody; that he carried it on shore at
 
 Lewistown,
 
 in the
 
 Delaware
 
 state, and from thence to Philadelphia, by land. 1
 
 Vent.
 
 308.
 
 Carth.
 
 423.
 
 Dallas Rep.
 
 50. All the proceedings of a Court, having no jurisdiction, are void. 1
 
 Salk.
 
 201. From which it rather seems, that the Court of Admiralty had no jurisdiction of the original cause, from any allegation, averment, or other matter, appearing in the information; and that this writing would not warrant a suit in that Court. But, as to this, it is not necessary to give a positive opinion.
 

 2d. I will then consider the second point, whether
 
 Fournie
 
 could take this writing by the common law from the defendants?
 

 Although a Court of Admiralty cannot take a recognizance, which is a bond, or obligation, of record (that Court not being a Court of record, nor the Judge, a Judge of record.
 
 6 Fin. Abr.
 
 500. letter I.
 
 pl.
 
 1.) yet, it can take a. caution or stipulation; which is usually for appearance, or to perform a decree,
 
 &c.
 
 and is in nature of a recognizance. It appears, that the
 
 *123
 
 proceedings in the Admiralty were without the participation or knowledge of
 
 Lewis
 
 Lanoix; that no coercion was used by the Court; that all was voluntary, and not only by
 
 consent,
 
 but on the
 
 application,
 
 of the defendants. There is no positive law for declaring such a writing void ; it was not given for any thing aainst good morals, or illegal, but for a meritorious valuable consideration, to wit, a sum of money delivered in specie, and for an, honest purpose. If the taking this writing in
 
 the Court
 
 cannot give it any additional sanction, so, on the other hand, it cannot destroy or prejudice its legal operation. Though void as
 
 stipulation,
 
 it is good as a
 
 contract;
 
 just as it was determined in the case of
 
 Ascue versus Hollingsworth, Cro. El.
 
 544. that an instrument, which was void as a
 
 Statute-Staple,
 
 was yet good as an
 
 obligation;
 
 and the case in 2
 
 Strange,
 
 1137, favors this opinion.
 

 For these reasons, I think, this transaction may be considered as done out of Court; and that it is good and binding on the parties by the Common Law.
 

 3d. The next and principal question is, whether the present information in debt upon this writing is maintainable?
 

 It has not been doubted, but that a special
 
 assumpsit
 
 would lie in this case; but it has been denied, that an action of debt will lie.
 

 A debt is a sum of money due by
 
 express
 
 agreement; either iwriting, or by parol, where the quantity is
 
 fixed,
 
 and does not depend on future calculation;—the non-payment or non performance is an injury, for which an action of debt may be brought. 3
 
 Blackst.
 
 153.
 
 Fitzh. N. B.
 
 145. 1
 
 Lill. Abr.
 
 554.
 
 C.
 
 2
 
 Bac. Abr.
 
 13. And it is held in
 
 6 Mad.
 
 129. that a meritorious valuable consideration will raise a debt. If A gives money to B, to buy wares, or any other thing for him, and B does not buy them, debt will lie for the money. 7
 
 Vin. Abr.
 
 title
 
 “
 
 debt” (K)
 
 pl. 26.
 
 for, by the delivery of the money, as it cannot be known again, the property is altered, and a duty arises.
 

 Debts, for which an action of debt may be brought at Common Law, may be classed under four general heads:
 

 1st. Judgments obtained in a Court of record on a suit.
 

 2d. Specialties acknowledged to be entered of record, as a recognizance, statutes merchant, or staple, or such like.
 

 3d. Specialties, indented, or not indented.
 

 4th. Contracts without specialties, either express, or implied.
 

 The present action comes under the last head, and is founded on an
 
 express
 
 contract in writing, whereby in consideration of five barrels of silver coin, delivered by
 
 Anthony Fournie,
 
 by the advice of the Court of Admiralty, to the defendants, they promise and engage to remit them to
 
 Lewis Lanoix,
 
 at
 
 Bour
 
 
 *124
 

 deaux,
 
 or to pay to the Commonwealth £4,000 sterling, for his use. The writing is in the form of a recognizance, taken as a stipulation in the Admiralty, but deriving no advantage or prejudice therefrom : It is a legal, fair and honest contract, grounded upon a meritorious and valuable consideration; and although Mr.
 
 Ross
 
 is only a surety (and I am sorry he is such) yet, unless he had entered into the writing, the contract might not have been made; he has become a party in it, and is responsible for the performance, equally with the other defendants. The sum demanded is fixed and certain; there was a duty certain, which has' not been performed, for which an action of debt lies, And, although I should have preferred an action of special
 
 assumpsit
 
 ; yet, I conceive an action of debt is maintainable.
 

 The Commonwealth must be considered as a trustee
 
 for Lewis Lanoix,
 
 on the authority of 1
 
 Vern.
 
 439. 1
 
 Vezey.
 
 453. 4
 
 Burr.
 
 2110.
 

 The verdict has been taken in the manner long practised in
 
 Pennsylvania,
 
 though peculiar to it, and is in consequence of an act of Assembly.
 

 Upon the whole, the Court unanimously agree, that the judgment be entered for the plaintiff.
 
 *
 

 Judgment for the Plaintiff.
 
 *
 

 *
 

 The defendants, brought a Writ of Error; but, on the 11th
 
 July,
 
 1793, the Judges of the
 
 High Court of Errors and
 
 Appeals, unanimously affirmed the Judgment of the
 
 Supreme Court.