## Case No. 7,147.

### JACKSON v. SIMONTON.

[4 Cranch, C. C. 255.] [1]

Circuit Court, District of Columbia. Nov. Term, 1832.

CRANCH, Chief Judge (nem. con.). This cause is submitted to the consideration of the court upon a general demurrer to the declaration. It is understood that it was intended to submit to the court the question whether the bond is, in law, valid against

[1] [Reported by Hon. William Cranch, Chief Judge.]

the defendant, who is a surety only, under any form of declaration which the attorney could draw, consistently with the facts in the case; and, consequently, that he may so amend his declaration; and that the defendant had oyer on the bond before he demurred; and that the breach, insisted upon by the plaintiff, is, that the marshal has not accounted to the United States for $2,500 advanced to him as marshal. The bond, with its condition and indorsements, is in these words:

"Know all men by these presents that we, John Dean, and John W. Simonton, and John Whitehead, and R. D. Richardson, are held and firmly bound unto Andrew Jackson, president of the United States, and his successors in office, in the penal sum of twenty thousand dollars, for the payment of which, well and truly to be made, we bind ourselves and each of our heirs, executors, and administrators, jointly and severally, firmly by these presents, signed, sealed, and dated this 6th day of June, 1829. The condition of this obligation is such, that whereas John Dean aforesaid has been duly appointed marshal of the Southern judicial circuit of the United States district court (at Key West) of the territory of Florida: Now, if the said John Dean will faithfully and impartially discharge all and singular the duties incumbent on him as such, then this obligation to be void, otherwise to remain in full force and virtue. In testimony whereof we have hereunto set our hands, and affixed our seals, this —— day of ——, in the year of our Lord one thousand eight hundred and twenty-nine. and of the independence of the United States the fifty-third year. John Dean. (Seal.) J. W. Simonton. (Seal.) J. W. Whitehead. (Seal.) R. D. Richardson. (Seal.)

"Test: Elizabeth B. Hutchinson. Mary B. Hutchinson."

On the back of the bond was this indorsement: "The within bond is accepted as a temporary compliance with the requirements of the law, and to serve until Mr. Dean can have an opportunity to see the judge and obtain his approbation. M. Van Buren. June 10, 1829."

Upon this demurrer, the following questions arise: 1st. Was this marshal obliged to give the bond required by the 27th section of the judiciary act of the 24th of September, 1789 [1 Stat. 73], before he could lawfully enter upon the duties of the office? 2d. If he was, is this bond a substantial compliance with the requirement of that law, so as to authorize him to enter upon those duties? 3d. If not, is it a good bond at common law? 4th. If so, can the condition of it be broken by any act of the said John Dean, before he was authorized by law to enter upon the duties of the said office?

1. Was this marshal obliged to give the bond required by the 27th section of the act of 1789, before he could lawfully enter upon the du-

ties of the office? By that act the United States were divided into thirteen judicial districts, in each of which a district court was to be held by a district judge; and the 27th section provides "that a marshal shall be appointed in and for each district, whose duty it shall be to attend the district and circuit courts, when sitting therein;" "and to execute throughout the district, all lawful precepts directed to him and issued under the authority of the United States." "And before he enters on the duties of his office, he shall become bound for the faithful performance of the same, by himself and by his deputies, before the judge of the district court, to the United States, jointly and severally, with two good and sufficient sureties, inhabitants and free holders of such district, to be approved by the district judge, in the sum of twenty thousand dollars; and shall take, before said judge, as shall also his deputies, before they enter on the duties of their appointment, the following oath of office," etc. The thirteen districts provided for by that act were, Maine, New Hampshire, Massachusetts, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, Kentucky, South Carolina, and Georgia. The constitution of the United States had not, then, been adopted by North Carolina and Rhode Island. But the 27th section says, "in and for each district;" not each of the said districts. Perhaps the word "said" was intentionally omitted, so that the language of the act might apply to districts thereafter to be formed. The act of the 4th of June, 1790, for giving effect to the judiciary act within the state of North Carolina, provides that it "shall have the like force and effect," within that state, "as elsewhere within the United States;" and declares that state to be a district, but does not specially provide that there shall be a marshal. (1 Stat. 126.) The act of the 23d of June, 1790, for giving effect to the judiciary act within the state of Rhode Island, has the same provisions. (1 Stat. 128.) The act of the 2d of March, 1791, "giving effect to the laws of the United States within the state of Vermont," declares that all the laws of the United States, not locally inapplicable, shall have the same force and effect within the state of Vermont as elsewhere within the United States; makes the state a district, and provides a judge, but no marshal; yet the 7th section recognizes the existence of a marshal by giving him a compensation for taking the census. (1 Stat. 197.) The act of the 31st of January, 1797, giving effect to the laws of the United States within the state of Tennessee, has the same provisions, except that it says nothing of a marshal. (1 Stat. 496.) The act of the 19th of February, 1803, to provide for the execution of the laws of the United States within the state of Ohio, declares that all the laws of the United States not locally inapplicable, shall have the same force and effect, within

that state, as elsewhere within the United States. The fourth section provides for a district attorney, and the fifth for a marshal, who shall perform the same duties, be subject to the same regulations and penalties, and be entitled to the same fees, as are prescribed to marshals in other districts. (2 Stat. 201.) The act of the 3d of March, 1817 (3 Stat. 390), respecting Indiana, is in the same words; so is the act of the 3d of April, 1818 (Id. 413), respecting the state of Mississippi; and of the 3d of March, 1819 (Id. 502), respecting Illinois; and of the 21st of April, 1820 (Id. 564), respecting Alabama; and of the 16th of March, 1822, respecting Missouri. By the act of the 3d of March, 1805 (Id. 338), it is enacted, that the superior courts of the several territories of the United States in which a district court has not been established by law, shall, in all cases in which the United States are concerned, have, and exercise within their respective territories, the same jurisdiction and powers given, by law, to the district court of Kentucky district, &c., that is, the jurisdiction and powers of district and circuit courts of the United States excepting appellate jurisdiction. The act of the 8th of April, 1812, for the admission of the state of Louisiana into the Union, &c., makes the state of Louisiana, and the remnant of the territory of Orleans, one district, and provides for a judge and attorney, but does not provide for a marshal, otherwise than by enacting that the laws of the United States shall have the same force and effect in that state as elsewhere in the United States. (2 Stat. 701.) The act of the 26th of March, 1804, erected the territories of Orleans and Louisiana. The eighth section provides for a district court in the territory of Orleans, a district judge with the jurisdiction of a district and a circuit court; an attorney, and a marshal, who was to perform the same duties, be subject to the same regulations and penalties, and be entitled to the same fees, to which marshals in other districts were entitled for similar services, and $200 for extra services. (2 Stat. 283.) By the acts of the 30th of March, 1822 (3 Stat. 654), and 3d of March, 1823 (Id. 750), for the establishment of a territorial government in Florida, it is enacted that there shall be a superior court for East Florida, and another for West Florida; that there shall be two marshals, one for each of the said superior courts, who shall perform the duties, &c., (as in the above act of the 26th of March, 1804), and be entitled to the same fees to which marshals in other districts are entitled for similar services. The act of the 26th of May, 1824 (4 Stat. 45), provides for three superior courts in the territory of Florida, and a marshal for each of the said courts, who shall perform the same duties, &c., as above, &c. The act of the 15th of May, 1826, § 9 (4 Stat. 164), requires that the marshal of each district (in the territory of

Florida), shall execute bond, with security to be approved by the said judges, conditioned for the performance of the duties required of the executive officers by the laws of the said territory, in the sum of $10,000, which shall be recorded by the clerks of the said courts. And by the act of the 23d of May, 1828 (4 Stat. 291), it is enacted, "that there shall be another judicial district in the territory of Florida, to be called the Southern District, embracing all that part of the territory," &c. "There shall also be appointed an attorney and marshal who shall exercise all the duties, give the same bond and security, and be entitled to the same salaries, fees, and compensation that is now allowed by law to attorneys and marshals in other districts in the territory." This is the act under which Mr. Dean was appointed marshal.

It appears, from a view of all these acts admitting new states into the Union, and creating new judicial districts, that in some instances congress has supposed that when a new judicial district was created a marshal would be appointed as a matter of course under the general words of the 27th section of the judiciary act of 1789 (1 Stat. 73), directing "that a marshal be appointed in and for each district;" and that, in other instances they have, in the acts creating new judicial districts, expressly provided for the appointment of a marshal, and declared that he shall perform the same duties as are prescribed to marshals in other districts. In no case have they expressly required that the marshals of these new districts should give the bond and take the oath required by the 27th section of the act of 1789; but that was among the duties prescribed to the marshals in other districts, and consequently became also the duty of the new marshals. And such has been the uniform practice of the government. The new marshals have always been required to give the bond and take the oath prescribed in the 27th section of the act of 1789, before entering upon the duties of their office. The language of the act of the 23d of May, 1828, is certainly very inaccurate; but it was evidently the intention of the legislature to subject the marshal who might be appointed under that act, to the same duties, regulations and penalties to which marshals in other districts, in the territory, were subject. Among those duties was that of giving the bond, and taking the oath required by the 27th section of the act of 1789, as well as that of giving the bond in the penalty of $10,000 required by the ninth section of the act of the 15th of May, 1826. This marshal therefore was obliged to give the bond and take the oath required by the 27th section of the act of 1789, before he could lawfully enter on the duties of his office.

2. Is this bond a substantial compliance with the requirement of that act? It is clear to us that it is not. It is not a bond "to the United States;" it is not executed by "two good and sufficient sureties, inhabitants and freeholders of the district" of which he was appointed marshal; nor "approved by the district judge" of that district; nor does it purport to be "for the faithful performance of the duties of his office by himself and his deputies;" nor does it correctly describe the office to which Mr. Dean had been appointed. The office created by the act of the 23d of May, 1828, is that of marshal of the Southern judicial district in the territory of Florida; but the office described in the condition of the bond is that of "marshal of the Southern judicial circuit of the United States district court at Key West, of the territory of Florida.

3. But may it not be valid as a voluntary bond? It appears, upon its face, to be taken by the president of the United States, colore officii, for it is made payable to him "and to his successors in office." It is not a personal contract, and must have been intended for the use of the United States. But the president had no authority from the United States to take such a bond, or to enter into any such contract on the part of the United States, with the marshal. The judge of the district was the only person designated by the act of congress, to take the bond, and judge of the sufficiency of the security; and he could only take it "in the name of the United States." Nor could the secretary of state accept any other bond than one given and approved according to the statute; nor authorize the marshal to enter upon the duties of his office until such bond was given. This bond cannot be considered as having been accepted by the United States, because not accepted by the judge who alone had authority from the United States to accept it. It cannot, therefore, be considered even as a voluntary bond; not having been delivered to the proper officer.

4. But if it should be considered as a valid bond at common law, yet there has been no breach of its condition; for if Mr. Dean was never qualified to enter upon the duties of the office, he cannot have violated those duties; and his sureties are not answerable for any money which the officers of the government may have put into his hands before he was lawfully authorized to receive it, and which he may have misapplied, or not accounted for, before he was qualified to act as marshal. He could do no act as marshal until he had given the bond required by the statute, and until it had been received by the proper officer. No officer of the government can take a valid bond to himself colore officii, or in his official character, which he is not specially authorized by law, to take. The officers of the government are not corporations sole. They cannot take bonds to themselves and their successors in office. The successor, as such, cannot maintain an action upon such a bond. The United States can act only by authorized agents. No per-

son can lawfully assume an agency which shall bind the United States. Upon the whole. then. it seems to us, that this bond is absolutely void. Judgment for the defendant upon the demurrer.