## School Directors *against* Carlisle Bank.

| 8 W | 289 |
| d 20 SC | 215 |
| 8 W | 289 |
| 26 SC | 153 |
| 8 W | 289 |
| 211 | 55 |

The stock which a bank owns in another corporation, or its own, is not subject to taxation for school purposes, under the provisions of the act of the 25th of March 1831.

Nor does the bank waive its objection to the assessment of such a tax, by its omission to appeal therefrom, in the manner prescribed by the sixth section of that act.

ERROR to the common pleas of *Cumberland* county.

The School Directors of the borough of Carlisle against the Carlisle Bank. Amicable action and special verdict.

It is agreed that the following facts be considered a special verdict found by a jury on which judgment shall be entered by the court:

A warrant was issued by the commissioners of Cumberland county, to James London, assessor of the borough of Carlisle, in due form, dated 27th November 1837, requiring him to make return, &c. of property taxable for school purposes, &c. returnable 3d January 1838, which was duly returned by assessor, in which assessment personal property of the Carlisle Bank was returned, amounting to 60,280 dollars. Another warrant issued to said assessor on the 18th of January 1838, requiring him to give notice to each taxable, &c. of the amount thus assessed upon them, and the time and place of appeal to be held by the commissioners, which was on the 1st of March 1838. Of this the Carlisle Bank had due notice, but did not attend said appeal.

A copy of the assessment and adjusted valuation thus made, was furnished by the assessor to the school directors, after the ap-

peal held by the commissioners. On the 14th of May 1838, the school directors, in pursuance of the provisions of the acts of assembly, and the proceedings of a meeting of the taxable inhabitants of the district, assessed the sum of 3020 dollars on said district, and on the 25th June 1838, a warrant with a duplicate thereto annexed, was, issued by the president of the board, in due form, to A. Words, collector, requiring him to collect and pay over the full amount of his duplicate within four months from the date thereof, to wit, on or before the 25th October 1838.

In July 1838, the collector called on the Carlisle Bank for the said tax, which the said bank refused to pay to said collector, on the ground that the same was assessed on stock which was not the subject of assessment in their hands. And afterwards on the 15th January 1839, the said Carlisle Bank, by its attorney, appeared before the board of school directors, and asked to be exonerated from the said tax, which exoneration was refused by the said board of school directors.

The personal property returned by assessor on which the tax was assessed, consisted of 60,000 dollars of stock in the United States Bank of Pennsylvania, purchased and owned by the Carlisle Bank, and 280 dollars of stock in the Carlisle Bank, purchased and owned by the Carlisle Bank itself. At the time of the assessment and return by the assessor, of the aforesaid personal property, the amount of the capital stock of the Carlisle Bank paid in, was 223,737 dollars, and the notes and bills discounted by the bank were 334,566 dollars 92 cents. At the same time, the said bank was indebted to its stockholders as aforesaid, and to depositors, 69,000 dollars, and for notes in circulation, together an amount equal to the said sum of 334,566 dollars 92 cents—and the said 60,280 dollars, the stock on which the tax is claimed.

The dollar rate in assessing the tax by the board of school directors, was three and three-fourths of a mill on real and personal property, and the tax assessed upon the personal property of the Carlisle Bank, was 226 dollars 5 cents.

Upon the above statement of facts, should the court be of opinion that no part of the above tax can be legally collected, then judgment to be entered for defendant. But should the court be of opinion that said tax can be legally collected, then judgment to be entered for plaintiffs for the sum of 226 dollars 5 cents. But should the court be of opinion that only the tax upon one of the aforesaid sums can be legally collected, then judgment to be entered for plaintiffs for such sum as may, in the opinion of the court, be legally collected.

The court below (Hepburn, president) rendered a judgment for the defendant.

*Graham*, for plaintiff in error.
*Biddle*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—Two questions have been made and argued in this case. First, is the sixty thousand dollars worth of the capital stock in the Bank of the United States of Pennsylvania, and the two hundred and eighty dollars worth of the capital stock in the Carlisle Bank, which are all held and owned by the Carlisle Bank, the defendant in error, taxable, as the property of the bank, under the provisions of the act of the 25th of March 1831? *Stroud's Purd.* 200. Secondly, if it be held that the bank cannot be lawfully taxed for such property, then has not the bank waived its right to object now to the assessment, and the collection of the tax, by its omission to appeal from the assessment in the manner and at the time prescribed by the sixth section of the act of 1831, and the provisions of the act of the 11th of April 1799, and the several supplements thereto, to which the said 6th section has reference.

As to the first question; although it cannot be denied but that the bank, being a corporation, and therefore a *person* in contemplation of law, may be included by the use of the term " person," yet, in the construction of statutes, the terms or language thereof are to be taken and understood according to their ordinary and usual signification, as they are generally understood among mankind, unless it should appear from the context, and other parts of the statute, to have been intended otherwise; and if so, the intention of the legislature, whatever it may be, ought to prevail. Therefore, in the case before us, the term " person" being generally understood as denoting a natural person, is to be taken in that sense, unless from the context, or other parts of the act, it appear that artificial persons, such as corporations, were also intended to be embraced. Besides, it has generally, if not universally been the case, that the legislature in passing acts, when it was intended that the provisions thereof should extend to corporations as well as to individuals, designate specifically, so as to leave no room for doubt. Here, however, nothing of the kind appears, nor is there any thing in any part of the act which goes to show that a bank was intended to be comprehended within the meaning intended by the legislature to be affixed to the term " person." But various equitable considerations are presented by the tenor and several provisions of the act, tending to show very clearly that banks could not have been intended to be subjected to taxation, on account of such property as is taxed in this case, being held and owned by them.

In the first place, it is perfectly clear, from the first section of the act, that the capital stock of the bank, as it consists of shares subscribed in money, on which dividends are received by the respective holders thereof, is made taxable as the property of such holders as individuals; and whenever they can be reached, they will, if assessed, be made to pay the amount thereof. And it is equally clear that the capital stock of the bank must be considered as re-

[School Directors v. Carlisle Bank.]

presenting all the property of the bank, whether it consists of notes, bills, bonds, mortgages, judgments or debts owing to it, under any other form and stocks held by it, either in itself or in other corporations.   These things taken in the aggregate, make the value of all the shares belonging to the individual holders thereof; and each share represents its proportional part of that value, and is estimated accordingly in sales and valuations made thereof.   By the express provisions of the same section, these shares are to be assessed according to their value, as the property of the persons respectively to whom they belong.   Thus the sixty thousand dollars worth of stock in the United States Bank of Pennsylvania, and the two hundred and eighty dollars worth of stock in the Carlisle Bank, all held by the Carlisle Bank in its corporate capacity, being made liable to taxation, as the property of the respective owners of the shares of the capital stock therein held by them, which shares represent the said sixty thousand two hundred and eighty dollars . worth of stock, as well as all the other property of the bank, it would seem to be unjust, and certainly not equitable, that these sixty thousand two hundred and eighty dollars should be held liable to a second taxation, which must, if paid, come out of the pockets in effect of the owners of the shares of the capital stock in the Carlisle Bank, according to the number or amount thereof owned by them respectively, in the latter form of taxation as well as in the former.   It would be literally taxing them for the same property twice, which would seem to be the very height of injustice; and, therefore, without an express and positive direction contained in the act to do so, such intention, so apparently unjust, ought not to be imputed to the legislature, by a construction of the act that does not even appear to be the natural one.   It cannot be, then, that " person" was intended by the act to embrace the defendant, or other corporations of the kind.

In order to illustrate, as well as to evince still more clearly the correctness of this interpretation, suppose the whole capital stock of the bank had been lent, and bonds taken for the repayment of it, which were now held and owned by the bank: the stock would represent the value of the bonds; and the stock and the bonds might be considered as convertible; so that by assessing the stock distributively as the property of the individual stockholders, the value of the bonds would in effect be assessed also: and the stockholders, by paying the assessment imposed upon the stock as their individual or private property, may be said to pay virtually the assessed value of the bonds or property of the bank.   And so it is where the whole capital stock of the bank, consisting, as it does at first, in the commencement of its operations, entirely of money paid into bank by the subscribers to it, is lent out and invested in bills, notes, bonds, and stocks in other corporations; these bills, notes, bonds, and stocks of other corporations, the property of the bank, and the capital stock of the bank, belonging respectively to the shareholders

therein, represent their assessed value, so that in assessing the capital stock of the bank as the property respectively of the shareholders therein, the property, that is, the bills, notes, bonds, and stocks of other corporations belonging to the bank, may be said to be assessed; and the stockholders, in paying the tax so assessed upon the capital stock as their property respectively, may be said to pay a tax upon the property of the bank, consisting of the bills, notes, bonds, and stocks of other corporations, which are represented in their value and identity, as it may be said, by the capital stock in the bank, held by the stockholders respectively. But if these bills, notes, bonds, and stocks of other corporations are assessed again as the property of the bank, and such assessment paid by the bank, then it is perfectly obvious that the stockholders are assessed twice instead of once, for substantially the same property; and they in effect, too, are made to pay both assessments. They are made to pay the first assessment on the capital stock of the bank as their private property respectively, directly out of their own pockets. And the bank is made to pay the second on the bills, notes, bonds, and stocks of other corporations, as the property of the bank, but represented in fact by the capital stock belonging to the individual stockholders, upon which they paid the first assessment, whereby the interest that they have in the bank, and the amount that otherwise would be coming to each of them from the bank, is reduced *pro tanto.* Why did not the plaintiffs here also assess the notes, bonds, and other securities held by the bank for the payment of money? They might as well have undertaken to do this, as to assess the bank for the stock in question, which it holds. The one certainly comes as much within the letter, spirit, and meaning of the act as the other: and the capital stock of the bank belonging to the individual owners thereof, represents the latter in every respect the same and as fully as it does the former.

All debts due from solvent debtors by notes, penal or single bills, bonds, judgments or mortgages, and stocks in corporations, (wherein shares were subscribed in money,) and on which any dividend or profit is received by the holder thereof, which are owned or possessed by any *person*, are made subject, by the terms of the act, to a tax of one mill upon every dollar of the value thereof. Now it is perfectly manifest, that unless the term " person " can be made to include banks and other corporations, the plaintiffs had no authority whatever to tax the property in question, as the property of the bank. But if " person " be made to comprehend corporations, then the notes, penal and single bills, bonds, &c., of the bank are all liable to be taxed, as the property of the bank, as well as the stocks held by it in other banks or corporations, (wherein the shares have been subscribed in money,) and on which dividends or profits are received. This conclusion, however, though legitimately derived from the premises attempted to be established by the plaintiffs, would seem to lead to such enormous injustice, that they, as it may

be presumed, were unwilling to carry it out to its utmost extent in practice. But then it furnishes a most powerful, if not conclusive argument in the second place, against giving to the act such interpretation, when there is nothing in it going clearly to show that the legislature intended it. From the case before us, as stated, it appears that at the time of the assessment in question, the bank held notes and bills to the amount of 334,737 dollars; exceeding the amount of the capital stock paid in nearly 111,000 dollars; for which excess the bank stood indebted to its depositors and the holders of its notes. Hence, according to the construction contended for by the counsel for the plaintiffs, the capital stock of the bank would be liable, as the property of the stockholders, to pay one assessment: the bills and notes of an equal amount, taken for the capital upon its being lent out, liable to pay a second assessment, as the property of the bank: and again, in addition to these two assessments, the bank upon the same principle would be liable to pay a third assessment, upon the excess of 111,000 dollars, as property held by it, though it owed every cent of the amount to its depositors and note holders. Thus the effect of such interpretation of the act would be to make the same property pay assessments in amount upon a sum or estimate exceeding the real value of it nearly threefold. But in truth a bank cannot be said to be the real owner of any thing which it holds or has in possession; all belongs either to the stockholders or its depositors and note-holders. It stands a debtor for all that it can, in any sense be said to own or have any control over; so that it would seem to be impossible to tax the bank and its stockholders, without assessing both the creditor and the debtor; a thing which could never have been contemplated or intended by the legislature. It may be, and it is even probable, that it is so, that all the stockholders of the bank may not be within the reach of the plaintiffs, so as to be assessed and made to pay the amount thereof, but then that will furnish no reason for dealing unjustly with those who are within their power and can be come at.

We come now to the second question, Can the plaintiffs lawfully collect the tax in question? Having shown that corporations are not comprehended within the terms of the act under which the proceeding in question was had, nor even named or mentioned therein; and that the plaintiffs, therefore, had no power or authority whatever to assess the defendant, it would seem to follow not only as a natural, but necessary and inevitable corollary that that which could not be lawfully assessed for want of jurisdiction, could not be lawfully levied or collected. The rule of the common law, which is the only one applicable here, seems to be, that the proceedings of a court having no jurisdiction are void; and trespass will lie against the officer, who either takes the person or the property of him, against whom he has the process of such court commanding him to do so. 1 *Salk.* 202; 2 *Dall.* 122; Papillon *v.* Buckner, *Hardr.* 478; Terry *v.* Huntingdon, *Ibid.* 480; Cruise *v.* Withers,

[School Directors v. Carlisle Bank.]

3 *Cran.* 331. The bank, after having been notified of the intention of the plaintiffs to assess it, and of the time and place of holding the court of appeal, under the direction of the 6th section of the act of 1831, for the purpose of giving relief to such as were about to be assessed improperly, might have appeared and objected to being assessed; and it is possible too, that the plaintiffs, upon hearing the objection and the reasons, which might have been advanced in support of it, would have been convinced that they had no authority to assess the bank, and accordingly have desisted therefrom; or it may be that the plaintiffs would still have continued to entertain the opinion that they had jurisdiction over the bank, and authority to assess and levy the amount thereof from it. Then what was the bank to do? Was it bound to abide by such decision? No appeal is given by any of the acts having relation to this subject, from the decision of the court of appeal to any other or higher tribunal; so that the only remedy which remained to the bank in such case, would seem to have been that which is given by the common law, that makes all those trespassers, who shall proceed without jurisdiction, to molest either the person or the property of the party, and enables him when injured thereby to recover, by means of an action of trespass, a compensation equal in amount, at least, to the value of the damages sustained. Seeing the bank is not comprehended by the language or terms used in any part of the act giving the plaintiffs authority to make and levy assessments, it was not bound to pay any regard to the notice given to it of the intention to assess it, and of the court of appeal that was about to be held. The bank is not embraced by any general or special terms employed in the act, and afterwards exempted from the operation of them by an exception inserted therein in its favour. The language and terms of the act denote and comprehend merely a certain class of persons, who are to be taxed by the plaintiffs, that is, natural or private persons, and not political or artificial; so that the plaintiffs cannot be considered as having any manner of excuse for assessing the defendant; such as that they had, by the general terms of the act, jurisdiction given to them over all persons, of every description, political as well as natural, and that the bank, if exempted from the general operation of the act, could only claim to be so by virtue of some special exception contained in it; and, therefore, ought to have appeared and shown it in due time, before the court of appeal. Indeed it is not very probable that the bank would have gained a decision in its favour from the court of appeal, even if it had appeared there, or otherwise the board of directors would have granted the bank relief, under the provision contained in the 6th section of the act of 1836, which seems to be sufficient to authorise the correction of any mistake which shall happen in making assessments. The words of this provision are, " The board of directors of each district shall have the right, *at all times,* to make such abatement or *exoneration* for *mistakes,* indigent persons,

unseated lands, &c., as to them shall appear just and reasonable." Certainly it was a mistake, of the very grossest kind too, to assess one not liable to be assessed at all in any shape or form—no greater mistake could well have been committed; and it would be an imputation against the good sense of the legislature to say that only the smaller and less important mistakes were intended to be corrected *at any time* by the board of directors; and that the greater and more serious ones should remain and prevail against the rights of the party injured and complaining.

Judgment affirmed.