PHILADELPHIA SAVING FUND SOCIETY *v.* YARD.

Under the act of 1846, investments in mortgages and loans made by a corporation created to receive deposits, on which interest is allowed to the depositors, are taxable for state and county purposes.

CERTIFICATE from the Nisi Prius.

*Dec.* 11. Assumpsit to recover money paid by plaintiff to the collector of taxes under a distress.

The plaintiff was a corporation created under the act of 1819, the preamble of which declares it was established for the purpose of receiving and investing such small sums as may be saved from the earnings of tradesmen, mechanics, labourers, servants, and others, and of affording to industrious persons the advantages of security and interest. And the 4th article declares, that the money deposited shall bear an interest of four and eight-tenths per cent per annum.

The assessments which were disputed were those for state and county purposes on mortgages. 2d. Those on loans of corporations, municipal and others.

The court gave judgment for defendant.

*T. J. Wharton,* for plaintiff in error.—The object of the act of 1844, was the payment of the interest of the public debt, as recited in the preamble (p. 497), nor can the words, "for county purposes," be sufficient to extend this law, when the whole machinery is exclusively adapted to the one purpose. By the 32d section there is a clear distinction taken between corporations and individuals, the tax on personal property of the former, excepting furniture, being laid on the dividends. This is fully recognised

_____

(*a*) ROGERS, J., was at Nisi Prius during the argument.

by Mr. J. Kennedy, in 8 W. 291. As the county is not permitted to lay the tax on the dividends, and as there is no other mode pointed out for them, it is contended that there was no intent to permit it to lay a tax on the *choses in action* of the corporation. Nor is this right extended by any subsequent act. Whether the state tax was lawfully assessed depends on the question of double taxation. If the dividends are taxable, then, of course, the property from the profits of which dividends are paid is not. This was decided in 8 W. 291, under the act of 1831, which is similar to the present act: 10 Mass. Rep. 514; 17 Ib. 461; 5 Greenl. 133; 12 Gill. & John. 117. There are no dividends on stock here, it is true, but the whole fund is composed of deposits which draw interest. That interest is directly taxable under the words "moneys at interest."

*Kneass*, contrà.—If the act of 1844 does not confer the right, that of 1846 (p. 486) certainly does. These deposits have never yet been separately taxed, nor would it be possible to levy them from the class of persons mentioned, whose residences, if within the state, are constantly changing, and whose proportion would be infinitely small. But double taxation is not necessarily improper, as was held in 7 Barr, 161; and as the particular property is designated for taxation by the law, that is sufficient, even though it may be in effect again taxed in other hands.

*Jan.* 8.    COULTER, J.—It is a matter of very little importance whether a corporation identical with the plaintiff in error was formerly subject to taxation by the statute of 1844, or not. The question is, whether it was subject to taxation or not in the year 1847. No argument can be drawn by analogy from statutes previously enacted, to the operative one in this case, passed the 22d April, 1846. Because the subjects and objects of taxation have been constantly extending and augmenting since the enormous increase of the public debt. And the plighted faith of the commonwealth requires that the last statute should be fairly and honestly enforced in all its length and breadth, in order to meet even the interest on that debt. And the annual message of the governor, delivered within a few days, last past, intimates strongly, that in order to enable the government to meet that interest, the public taxes must be extended and enlarged. What the legislature therefore intended to embrace in the statute of 1831, or of 1844, gives no authoritative or just rule for interpreting their intent in the act of 1846. Yet it would seem that even in the act of 1844, it was the intent

of the legislature to make the items taxed in this case subject both to state and county taxes. What the practice was before the passage of the act of 1846, I do not know. The 33d section of the act of 1844 provides, that the capital stock of all banks, institutions, or companies, chartered by any law of the state, shall be subject to taxation, in the mode therein pointed out. And the previous section provides, that all shares of stock, or weekly deposits in any unincorporated saving fund institution, shall be liable to taxation. This institution was incorporated in 1819, and of course its capital stock, which may with propriety be estimated at the amount of its bonds and mortgages, and stocks held in other institutions, was subject to taxation. And here I may say, that the case of the Carlisle Bank, 8 Watts, 291, so much relied on by plaintiff in error, is not in point. And although there are some of the *dicta* in that case which I apprehend do not meet the entire approbation of this court, yet the exact point ruled, that is, that the word person does not usually include corporations when used in statutes or common parlance, although in its legal import it embraces them, is well, and of good authority. But the converse is equally true, that when the whole face of the statute evinces an intent to include them, the word person will be sufficient for that purpose. That decision was made under the act of 1831, which imposed a tax on the shares held in banks, but as to bonds and mortgages on interest, included those held by persons, without anything to indicate an intent to embrace corporations by that word. Such is not the category of the act of 1844, much less of that of 1846. The horror of double taxation, manifested in that case, is unsuited to the times, for it has obtained and must prevail in the exigencies of the commonwealth; moreover, it is expressly recognised and established by the 6th section of the act of 16th of April, 1845. It exists in the case of ground-rents, where the land itself, and the *reditum* issuing from it, are taxed. In the tax upon a mortgage, to the whole value of the land, and the land itself. And so where A. borrows money on mortgage, and loans it to C. on bond, who loans a part of it to D., it is taxed in the current of each actual employment. In the complexity and involutions of business, a dollar is employed many times in a day, and in each actual employment represents the property, business, or the person of him who uses it. And in cases of this kind, it is the usufruct and not the actual or identical money that is taxed. The institution uses the fund or money, and makes profit according to its charter, for the depositors. If $4\frac{6}{10}$ per cent. is paid to depositors, the

actual profit to the institution, at 6 per cent., would be over and above this amount, about $18,000, and the tax is close upon $11,000, leaving $7,000 for expenses. So that if the object is purely benevolent, and to aid those who wish to accumulate small earnings, the object is attained, without loss to the benevolent institution. But who can tell how much of $1,500,000 employed, is the avails of small earnings, and how much the property of depositors to considerable amounts? For there usually does mingle in money associations, however praiseworthy and benevolent their object, some spice of selfishness. For many years deposits in any one year might be made by the same individual to the amount of $500; now it is limited to $200 a year. Many institutions of a like nature exist in this state, and the danger is, that large capital may seek immunity from taxation by expedients. But the question is, does the statute of 1846, by a fair construction, include the elements of wealth, such as those covered by the institution as objects of taxation? They are $1,493,347 of mortgages, and $48,284 of stocks of other institutions.

The 1st section enacts, among other things, that all property, real or personal, not taxed by existing laws, held, owned, used, or invested by any person, company, or corporation, in trust for the benefit, use, or advantage of other persons, excepting always such property as shall be held in trust for religious purposes, shall be subject to a tax of three mills on the dollar for state purposes. These mortgages and stocks are held and invested in trust by the saving fund for the benefit of other persons, and the exception proves the rule: they are not held and invested for religious purposes.

The 2d section, by a fair construction, in connexion with the 19th, and the whole purview, makes the same subjects of taxation enumerated in the 1st section, liable to taxation for county purposes, as in the act of 1844. And the 3d section, having no doubt special regard to the decision in 8 Watts, before mentioned, provides that every person, every firm and partnership, and every president, secretary, cashier, or treasurer of every company or corporate body subject to taxation, shall deliver to the assessor of each township, &c., a written or printed statement, showing the aggregate amount of bonds, mortgages, &c., enumerating every species of debts by contracts, agreements, decrees of court, stocks payable *in presenti* or *in futuro*, and whether bearing interest or not, and excepting certain things which are not embraced in this case.

There is a laborious intent on the part of the legislature to include every species of interest or personal property of this kind,

so as to defy the evasion of legal subtlety, no matter by what name held or invested. And why should it not be so? The poor and labouring man in the country pays tax for his cow and his cabin, and why not the poor man in the city, who has his capital invested for purposes of increase? But the great danger, in the mind of the legislature, was that large capital might seek immunity unless the net was wide-spread. The mortgages and evidences of debt, and the stocks held by this company in trust, to make profit thereby, according to its charter, and for the use of other persons, are fairly included in the terms of the act of 1844, but more especially in the statute of 1846, as subjects of taxation both for state and county purposes. The case of Carlisle Bank v. School Directors, 8 Watts, 289, does not give to corporations a general immunity from taxation for personal property, nor does it inhibit double taxation under existing laws. But whether the deposits in the institution, which yield $4\frac{8}{10}$ per cent., are in that capacity and by that name subject to taxation, in the hands of depositors or not, I intimate no opinion, because the question is not involved in this case. Nor whether the company must pay the whole tax out of the excess above $4\frac{8}{10}$ per cent., or take it from the general mass of profits.

If the one million and a half of personal estate employed in this institution in making profit, could be withdrawn from taxation, I know not how much might follow in existing institutions of the same kind, nor how great the temptation which might thereby be held out to multiply them.

Judgment affirmed.