Ahdbews, J.
The right of the United States to acquire and hold lands within a State, as incident to the execution of certain powers conferred upon congress' by the Constitution, has been exercised from the foundation of the government, and has not been questioned or denied.
It is essential that this right should inhere in the general government. The Constitution, among other powers, vests in congress the power to regulate commerce, to declare war, to, levy and collect taxes, tq establish post-offices, and to constitute inferior courts.
*533 In executing these powers, it may take and hold lands for the erection of light-houses, forts, custom-houses, post-offices and court-houses, and this State has been ready at all times to aid the general government, by assenting to the exercise by the latter of exclusive power of legislation over lands therein acquired for these purposes.
The mode in which congress shall acquire lands within a State required for public uses is not prescribed by the constitution. It may acquire title, doubtless, by voluntary conveyance from the owner, in any manner authorized by the law of the State in which the lands are situated, or it may take them, by the exertion of the power of eminent domain, upon making compensation to the owner. (Reddall v. Bryan, 14 Md., 444; Story on Const., § 1141; Cooley on Const!. Law, 525.) But it does not follow from the concession that congress may take lands within a State for necessary public uses, that the United States has power under the constitution to take by devise. It was held by this court in Levy v. Levy (33 N. Y., 99), that it had no power to take lands by devise in trust for a charity.
It is not necessary in this case to decide whether the United States could with the consent of a State, accept a devise of lands made to it directly, and unaccompanied by any trust.
In view of the origin and nature of the power to devise lands; of the right of each sovereignty to determine the limitations under which this power shall be exercised, and of our statute upon the subject, the devise to the United States in the will in question cannot be sustained.
Statutes of wills are enabling acts. Prior to the statutes 32 Henry VIII, chap. 1, and 35 Henry VIII, chap. 5, there was in general no power at common law to devise lands. It was a part of the feudal policy that lands could not he alienated without the consent of the lord, and the power to devise lands was opposed to this policy. If permitted, it would have deprived the lord of many of the incidents and profits of feudal tenure.
*534 The statutes referred to were not restrictive of antecedent rights, hut conferred a limited power to devise. They per-' mitted all persons (except feme coverts, infants, idiots and persons of non-sane memory) “ having a sole estate in fee simple of any manors, etc., to give, dispose, will or devise to any person or persons, except bodies politic or corporate.”
The English statute of wills became a part of the law of this State upon the adoption of the Constitution of 1777.
It was substantially re-enacted by statutes passed in 1787 and in 1813. (1 Greenl. Laws, 387; 1 R. L., 364.) And at the revision in 1830, the language was changed so as to provide that a testator may devise his lands “ to every person capable by law of holding real estate, but no devise to a corporation shall be valid, unless such corporation be expressly authorized by its charter or by statute to take by devise. (2 Rev. St., 57, § 3.) The validity of the devise to the United States in the will in question is to be tested by this statute. It is a settled principle of the common law, that the' lex rei sites governs in respect to the modes of transfer of real property and the capacity to make and receive them, and the validity of devises of lands is regulated and controlled by the local law; and the law of any other jurisdiction or sovereignty upon the subject, in opposition to the law of the place, is nugatory.
There can be no pretence that the States have surrendered to the general government control over this subject. JSTo such claim has been asserted; and jurisdiction over testamentary dispositions of lands within a State by the general government is in no way an essential or appropriate incident to the power to take lands for public uses.
It was held in White v. Howard (46 N. Y., 144) that the corporations, referred to in our statute of wills, are those created-by and existing under the laws of this State ; and a devise to a foreign corporation, of lands in this State, was held to be void, although the corporation was authorized by its charter to take by devise. It must be maintained, therefore, to sustain the devise in question, that the United States is a *535 person, within the purview of the statute. The word person, when used in a statute, will, unless the meaning is restricted by the context, be deemed to include corporations. (Shaw, J., in Commonwealth v. Phoenix Bank, 11 Met., 129; School Directors v. Carlisle Bank, 8 Watts, 289; United States v. Amedy, 11 Wheat., 392; Ang. & Ames on Corporations, §17.)
They are artificial persons; bodies politic, possessing some of the attributes of natural persons, and are subject to many of the obligations and duties imposed by law upon individuals.
In the present statute of wills it was used in this comprehensive sense; otherwise, the prohibition against devises to corporations, not authorized by their charters or by statute to take by devise, would have been unnecessary.
The use of the word in this general sense in the former statute, which allowed a devise to be made “ to any person or persons except bodies politic and corporate,” is still more apparent. But no authority has been referred' to showing that the word person, when used in a statute, may, without further definition, be held to embrace a State or nation. Its meaning may be extended by express definition so as to include a government or sovereignty.
An example of this may be found in our statute relating to crimes (2 R. S., 703, § 35), which declares that when the word person is used in the chapter to designate the party whose property may be the subject of an offence, it shall be construed to include the United States, this State, or any State government or country which may lawfully own any property within this State.
In construing a statute, words are to be taken in their ordinary sense, unless, from a consideration of the whole act, it appears that a different meaning was intended.
The word person does not, in its ordinary or legal signification, embrace a State or government; and there is no ground to justify such an extension of its meaning in construing the statute relating to devises.
*536 The gift, in the will in question, to the United States cannot be sustained as a devise of land, for the reason that the testamentary capacity given by the statute extends only to devises to natural persons, and such corporations as are authorized by the law ,of the State to take by devise.
The point urged on behalf of the United States, that there was by the will an equitable conversion of the land into peí sonalty, and that the gift may be treated as a bequest of the proceeds which should arise from the sale of the lands, cannot be sustained. There was no constructive conversion of the realty.
The plain intention of the testator was to devise the land, and not the proceeds, and that the United States should take as devisee of the land. He used apt words to charge the lands devised with the payment of debts.
The devise being “ after payment of debts,” was a charge of the debts upon the lands devised. (Lupton v. Lupton, 2 J. Ch., 614.)
They were not charged in exoneration of the pesonalty, and under our statute the lands devised would have been charged, in the hands of the devisee, with the debts, if no reference had been made to them in the will.
The only contingency upon which a sale of the lands could become necessary for the purposes of the will, would be in case the personal property should be insufficient to pay the debts of the testator.
It was uncertain whether a sale for that purpose would be required.
There was no direction in the will that the lands should be sold for the payment of debts. Ho express power was given to the executors to sell them; nor under our system of administering the property of decedents, for the payment of creditors, can such a power be implied from the mere charge of debts upon lands descended or devised.
In Jones v. Hughes (6 Exch., 222) it was held, by the unanimous judgment of the Court Exchequer Chamber, that there is no implied power in executors to sell lands, arising from *537 a mere change of the debts upon the land made by the will, and that in such case the remedy of creditors was in equity. This decision was not followed by the master of the rolls in Robinson v. Lowater (17 Bea., 592) or by the lord justices in the same case on appeal. (5 De G. M. & G., 271.)
Sir E. Sugden (Sag. on Vend., 14 Eng. ed.) speaks of these latter decisions as contrary to the received opinion, and the law upon the point has since been settled by statute. (22 and 23 Vict., chap. 35.)
The statute in this State has provided an ample remedy for creditors for the collection of their debts out of the real property of a decedent, and the implication of a power of sale in executors, from a simple charge of the debts upon the lands, is unnecessary and ought not to be indulged. But the mere power of sale, if it existed in the executors, would not work a constructive change of the property. To do this, the duty to sell must be imperative, and when there is no out and out conversion, and lands are charged only with the payment of debts, they retain their character of realty until actually converted. (2 Jar., 529; Story Eq., §§ 790,1224; Bourne v. Bourne, 2 Hare, 35; Stagg v. Jackson, 1 Comst., 206; Harris v. Clark, 7 N. Y., 242; Savage v. Burnham, 17 id., 561; Clark v. Riddle, 11 S. & R., 311.)
The judgment of the General Term should be affirmed, with costs.
All concur.
Judgment affirmed.