# Commonwealth v. Bailey, Banks & Biddle Company, Appellant.

*Taxation—Mercantile tax—Corporations—Manufacturing corporation— Act of May 2, 1899, P. L. 184.*

The Act of May 2, 1899, P. L. 184, relating to mercantile taxes applies to corporations.

A corporation chartered since the passage of the Act of June 3, 1893, P. L. 288, to engage in the business of " the manufacture and production of silverware, plated ware, jewelry, works of ornament and art and pictures, and the buying and selling of such articles " is subject to the mercantile tax.

The fact that a corporation has paid the bonus required at the time of its incorporation, and has annually paid the whole amount of the corporation tax assessed upon the whole value of its capital stock and assets, does not relieve the corporation from the payment of the mercantile tax, if it engages in the business of buying and selling goods. The bonus is the consideration paid to the state for granting the charter, and is not a tax; while the tax on the capital stock is a tax on the property of the corporation, whereas the mercantile tax is a tax upon the business of vending merchandise. Commonwealth v. Thomas Potter Sons & Co., 159 Pa. 583, followed.

Argued Dec. 11, 1901. Appeal, No. 188, Oct. T., 1901, by defendant, from judgment of C. P. No. 2, March T., 1900, No. 1094, for plaintiff, on case stated, in case of Commonwealth v. Bailey, Banks & Biddle Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Case stated to determine liability to mercantile tax.

The case stated was as follows :

It is hereby agreed by and between the parties to the above entitled cause, that the following case be stated for the opinion of the court in the nature of a special verdict.

That subdivision 17, class second, of the act of April 29, 1874, relating to the incorporation of certain corporations for profit was so amended by the act of assembly approved the 3d day of June, 1893, Laws of 1893, p. 288, as to provide for the incorporation of certain corporations for " the manufacture of iron or steel or both or any other metal or of any article of commerce from metal or wood or both, and the manufacture and production of silverware, plated ware, jewelry, works of ornament and art and pictures, and the buying and selling of such articles."

That by virtue of the provisions of said act of assembly of April 29, 1874, amended as above recited, by act of June 3, 1893, a charter was on the 2d day of March, 1894, duly issued by the commonwealth of Pennsylvania to defendant, authorizing it to engage in the business of " the manufacture and production of silverware, plated ware, jewelry, works of ornament and art and pictures, and the buying and selling of such articles.

That in pursuance of said charter defendant company en-

gaged in said business of manufacturing and producing silver-ware, plated ware, jewelry, works of ornament and art and pictures, and the buying and selling of such articles at its places of business hereinafter mentioned in the city of Phila-delphia, and has conducted such business at its said places of business from the date of its incorporation to the present time, and during said time has not engaged and is not now engaged as a retail dealer in or vendor of goods or merchandise other than those authorized by the said acts of assembly and its char-ter as aforesaid.

That on March 1, 1894, the defendant company paid to the commonwealth of Pennsylvania a bonus of one fourth of one per cent upon the amount of its capital stock amounting to $125 for the privilege of exercising its corporate powers as required by the act of assembly approved April 29, 1874, P. L. 73, section 44.

That from the time of its incorporation to the present time, the said defendant company has annually paid to the commonwealth of Pennsylvania the corporation tax upon its assets and the capital stock duly assessed against it by authority of laws taxing corporations in such cases made and provided, the said annual tax being in various amounts from $2,000 to $2,800 each year, including the sum of $2,822.20 assessed against it for the year 1900.

That the board of mercantile appraisers of the county of Philadelphia did, on or about February 26, 1900, make the following assessment against the said Bailey, Banks & Biddle Company for mercantile license tax, to wit:

| | |
|---|---:|
| Tax one mill on each dollar of amount sold | $1,088 00 |
| Additional tax to be paid by each retail dealer  .  .  .  .  .  .  . | 2 00 |
| Fees for city of Philadelphia to be paid by each dealer  .  .  .  .  .  . | 50 |
| Total to be paid to city treasurer for license | $1,090 50 |

The said tax was assessed in pursuance of the act of assembly of May 2, 1899, imposing a mercantile license tax on vendors of or dealers in goods, wares and merchandise; and is assessed in behalf of and for the use of the commonwealth of Pennsylvania.

That on May 7, 1900, the said Bailey, Banks & Biddle Company (by their officer and legal representative) appeared before the said board of mercantile appraisers and protested against the assessment of the said tax, but the said board refused to strike off the assessment, confirmed the same, and granted an appeal to the court of common pleas for Philadelphia county, which appeal was duly perfected as of the term and number of this case stated.

That the said board of mercantile appraisers has furnished to the treasurer of the county of Philadelphia a certified list of dealers in and vendors of goods, wares and merchandise in said county pursuant to the act of assembly of May 2, 1899, aforesaid; and have included in said list the name of said company defendant, and have assessed against it the said mercantile license tax of $1,090.50, as aforesaid, for the year 1900.

It is admitted for the purposes of this case stated that of the sales of goods, wares and merchandise upon which the said mercantile license tax has been assessed, $259,500 were for goods, wares and merchandise sold by it in its store or salesroom at the corner of Twelfth and Chestnut streets in the city of Philadelphia, but manufactured in a plant belonging to it, located at the southwest corner of Twelfth and Samson streets, and separated from said salesroom by an intervening street; and $828,500 were for goods, wares and merchandise purchased elsewhere and sold in its said store or salesroom as aforesaid; that all of the goods, wares and merchandise so manufactured or purchased and sold were of the character hereinabove described; and that the defendants are retailers within the terms and meaning of the said act of May 2, 1899.

That the said Bailey, Banks & Biddle Company has been obliged to make an annual return to the commonwealth of Pennsylvania pursuant to the laws taxing the capital stock of corporations and the above mentioned sum of $2,822.20, being the capital stock tax for the year 1900, paid by the company to the commonwealth of Pennsylvania was imposed by the commonwealth upon the basis of a certain return, a true and correct copy whereof is hereto attached and made part of this case stated. The defendant company claimed no allowance for the amount of its capital engaged in the manufacturing plant aforesaid, but included the same in its said return.

If the court shall be of opinion that defendant is exempt from payment of mercantile license tax upon the goods manufactured and sold and bought and sold by it as aforesaid, then judgment shall be entered in favor of defendant.

If defendant is exempt upon sales of goods purchased by it, but not exempt upon sales of goods manufactured by it in its factory and sold at its salesroom as aforesaid, then judgment to be entered for plaintiff for $262.50.

If defendant is exempt upon sales of goods manufactured by it, but not exempt upon sales of goods purchased by it, then judgment to be entered for plaintiff for $828.50.

If the court shall be of opinion that defendant is not exempt upon sales of goods of either class, then judgment to be entered against defendant for the whole amount of mercantile tax assessed against it as aforesaid, namely, $1,090.50.

Either party reserves the right of appeal or writ of error.

The court entered judgment for plaintiff on the case stated for $1,090.50. Defendant appealed.

*Error assigned* was the judgment of the court.

*John G. Johnson*, with him *Henry S. Cattell*, for appellant.— The Act of May 2, 1899, P. L. 184, was not intended to apply to corporations: School Directors of the Borough of Carlisle v. Carlisle Bank, 8 Watts, 291; Fox's Appeal, 112 Pa. 350; Commonwealth v. Lehigh Valley R. R. Co., 129 Pa. 452.

The act of May 2, 1899, was not intended to apply, and does not apply, to corporations that pay a capital stock tax upon the whole value of their capital stock and assets.

The imposition of the mercantile license upon corporations liable to and paying a capital stock tax amounts to double taxation, and this was not intended by the act of May 2, 1899: Guarantee Trust Co. v. Loughlin, 41 Leg. Int. 280; Penna. Co. for Ins. on Lives, etc., v. Commonwealth, 22 W. N. C. 346; Fidelity Insurance, etc., Co. v. Loughlin, 139 Pa. 621; Com. v. Fall Brook Coal Co., 156 Pa. 495; Com. v. Lehigh Coal & Navigation Co., 162 Pa. 610.

*Ira Jewell Williams*, with him *J. Martin Rommel* and *John P. Elkin*, attorney general, for appellee.—When a manufacturer

attempts to market its products by opening a store or warehouse apart from its factory, the corporation at once becomes liable as a vendor or dealer: Com. v. Thomas Potter, Sons & Company, 159 Pa. 583.

Language which relieves from taxation is to be strictly construed: Com. v. Lackawanna Iron & Coal Co., 129 Pa. 356; Com. v. Tombler Grocery Co., 5 Northampton, 297; Com. v. Swift & Co., 6 Pa. Dist. Rep. 664. If appellant company is liable for mercantile license tax upon goods manufactured by it, a fortiori is it liable upon goods purchased and sold.

A capital stock tax being a tax on the property and assets of a corporation, and the mercantile license tax being a tax upon the business of vending merchandise, there is no double taxation: Com. v. Standard Oil Co., 101 Pa. 145; Com. v. Lackawanna Iron & Coal Co., 129 Pa. 346; Nat. Bank v. Com., 9 Wall. 353; Com. v. Edison Electric Light Co., 157 Pa. 529; Fox's Appeal, 112 Pa. 337; Palace Car Co. v. Com., 107 Pa. 160; Knisely v. Cotterel, 196 Pa. 628.

OPINION BY RICE, P. J., April 21, 1902:

The defendant's first proposition is, that the Act of May 2, 1899, P. L. 184, was not intended to apply to corporations. It is true that nowhere in the act do the words corporation, company, president, secretary or treasurer appear, but the phrases, "each retail vendor of, or retail dealer in goods," "each wholesale vendor of, or wholesale dealer in goods," and other phrases of similar import are of frequent occurrence, and in the 5th section it is provided, that, "if any vendor of, or dealer in goods" refuses to make return, the county treasurer may compel the attendance, amongst others, of any "officer" connected with the business—a term which probably would not have been used if the legislature had had in mind natural persons only. It cannot be said of the words "vendor" and "dealer" that they have a popular meaning, as distinguished from their technical meaning, which would exclude a corporation. Hence the principle of construction which was applied in School Directors v. Carlisle Bank, 8 Watts, 289, and Fox's Appeal, 112 Pa. 337, does not apply here. In this act the context tends to show that the word person was used in its legal sense. Further, the phraseology of the mercantile license acts

which preceded the act of 1899, did not more clearly evince an intent to include corporations than does that act. For example, the act of 1841 extended the provisions of earlier acts to " all persons engaged in the selling or vending of goods," etc., and provided that " all such sellers or vendors shall be classed," etc.; the act of 1866, speaks of " the present classification of licenses of vendors of merchandise;" and the act of 1846 designated the persons to whom its provisions applied as "all dealers in goods, wares and merchandise . . . . and every person who shall keep a store or warehouse for the purpose of vending," etc. This language was construed to include a manufacturing corporation which kept a store or warehouse, where it sold goods manufactured by others as well as those made by itself. "As it is the object of the law to levy the tax on the business of the merchant or dealer, it is unimportant who the dealer may be, or whether the dealing is done in the name of a natural or an artifical person." This was declared in a case where the question was distinctly raised, whether the act of 1830 and its supplements applied to corporations dealing in merchandise, and where the same authorities were cited, as are cited by this appellant, in support of the contention that those acts applied to natural persons only: Commonwealth v. Thomas Potter Sons & Co., 159 Pa. 583 (1894). Where terms and modes of expression are employed in a new statute, which, at the time of its enactment, had acquired, by judicial construction, a definite meaning and application in a previous statute on the same subject, they are generally supposed to be used in the same sense, and in the construction of the later act, regard should be had to the known and established interpretation of such terms and modes of expression in the former: Endlich on Interpretation of Statutes, sec. 369. A plainer case than the present for the application of this principle can hardly be imagined.

But it is argued that the case at bar is distinguishable from the case cited, in that the defendant in that case was chartered as a manufacturing corporation, and the mercantile tax was imposed upon it because it went outside of its ordinary channels of business and opened a store for the conduct of retail business, whereas, the defendant in this case received its charter since the passage of the Act of June 3, 1893, P. L. 288, and was authorized, thereby, to engage in the business of " the

manufacture and production of silverware, plated ware, jewelry, works of ornament and art and pictures, and the buying and selling of such articles." In answer to this suggestion, we remark, that we find nothing in the opinion of Mr. Justice WILLIAMS to indicate that the decision was based on the fact that under its charter and the corporation laws then in force, the defendant was not specifically authorized to engage in the business of buying and selling at a place apart from its manufactory. The question whether this was ultra vires was not discussed. The points decided were, first, that the acts under consideration were broad enough to include corporations although that word was not used, and, second, that the exemption granted by law to manufacturing companies "is confined to the plant used for the manufacture of its goods, and the business of making and selling done there;" therefore, the conclusion followed which was thus stated : " When such a corporation goes beyond the line thus indicated, it subjects so much of its capital used, and its business done, outside of the legitimate business of a manufacturing corporation, to the same taxation that other persons or corporations engaged in the business thus entered upon are required by law to pay." This was in harmony with earlier decisions cited in the opinion, where the corporations possessed and exercised other powers than those of a manufacturing corporation. See also, 1 Weimer on Corporations, sec. 618. Having regard to the usual and ordinary signification of the words " vendor " and " dealer," to the definite meaning and application they had acquired by judicial construction of earlier statutes on the same subject, and to the context, we conclude, that the defense cannot be sustained upon the ground that the defendant is a corporation authorized by its charter to engage in the business of buying and selling.

It is further contended, that the defendant having paid the bonus required at the time of its incorporation, and having since annually paid the whole amount of the corporation tax assessed upon the whole value of its capital stock and assets, is entitled to carry on business without being subjected to the additional tax or license for the privilege of selling its goods.

There is no such inconsistency involved in subjecting a trading corporation, that has been required to pay a bonus of one quarter of one per cent upon the amount of its capital stock

before receiving its letters patent, to a mercantile license tax, as would warrant us in supposing that the legislature intended to exempt such a vendor or dealer from the operation of the act of 1899. A bonus, as the term is used in this connection, is "a sum exacted by the state from a corporation for granting a charter; in such case it is clearly distinguished from a tax:" 1 Bouv. Law Dict. Rawle's ed. p. 254; Baltimore & Ohio R. R. Co. v. Maryland, 21 Wall. (U. S.) 456; Commonwealth v. Erie & Western Transportation Co., 107 Pa. 112. The payment of such bonus as a consideration for the grant of the franchise to be a trading corporation does not create a contract which implies a surrender by the state of any part of its taxing power. Nor does the fact add strength to the argument, that, if the act of 1899 be construed as applying to such corporations, they will be subjected to double taxation.

Whether or not the defendant, being both a manufacturer and a dealer, was liable to a tax upon the actual value of its "whole" capital stock seems to us immaterial in this case. Therefore we shall not discuss that question further than to say that if it was not liable to a tax upon that part of its capital invested in its business as a manufacturer, the fact that such tax was assessed and paid cannot be urged in support of its claim to immunity from the mercantile license tax. The only fact important to be noticed in considering this claim to immunity is, that it was liable to pay, and has paid, the capital stock tax upon such proportion of its capital stock, "as" (quoting from the Act of June 8, 1893, P. L. 353) "may be invested in any property or business not strictly incident or appurtenant to its manufacturing business." In view of this fact does the exaction of a mercantile license tax subject the defendant to double taxation? "It has been repeatedly decided, and it is settled law, that a tax upon the capital stock of a company is a tax upon its property and assets:" Commonwealth v. Standard Oil Co., 101 Pa. 119; Fox's Appeal, 112 Pa. 337. In no sense is it a consideration for the privilege of carrying on the business for which the company was chartered. The nature and subject of the tax imposed by the act of 1899, have been authoritatively determined in the case of Knisely v. v. Cotterel, 196 Pa. 614. Judge SIMONTON, who delivered the opinion of the common pleas, said, after citing and discussing

several cases: " On the analogy of these and many like cases
that might be cited, we are of opinion that the tax in question
here is a tax, not on the property of the dealers or vendors, but
on their business transacted during the preceding year meas-
ured by its volume in dollars." And after discussing the
question whether the law could be sustained as a tax upon
property, Mr. Justice MITCHELL, who delivered the opinion
of the Supreme Court, said: " As already said, it could be sus-
tained as a classification according to the uses and purposes for
which the property is held. But an examination of the de-
tails of the present act makes it clear that the tax, as held by
the learned judge below, is upon the business of vending mer-
chandise, and that the classification is based on the manner of
sale, and within each class the tax is graduated according to
the gross annual volume of business transacted. This is ap-
parent from the fact that the amount of the tax over the small
fixed license fee is determined in every case by the volume of
business, measured in dollars, and the rate at which it is to
be levied is according to the manner of sale." It is thus
seen, that whilst the declared purpose of the tax is to provide
revenue, in which respect it does not differ from the capital
stock tax, the subject of taxation is not the same. In one case
it is the property and assets invested in the business, and is
measured by the value, in the other case it is the business it-
self, and is not measured by the value of the property invested
or the profits, but the volume of the sales. We are not clear
that this results in that kind of double taxation which is con-
demned by the courts. But double taxation, while not to be
presumed in the absence of a clear intent to impose it, is not
forbidden by the constitution and is sometimes unavoidable.
See Cooley on Const. Lim. 231, also Commonwealth v. N. Y.,
Lake Erie & W. R. R. Co., 150 Pa. 234. It is to be borne in
mind, also, that at the time of the passage of the amendatory
act of 1893, relative to the taxation of capital stock, mercantile
license laws were in force, which, as we have seen, were broad
enough to include manufacturing corporations engaged in the
business of dealers apart from their manufactories. The con-
cluding paragraph of the fourth proviso of the section would
seem to indicate an intention to relieve only so much of the
capital stock as is invested in the manufacturing plant and

business from any form of state taxation.  We are unable to distinguish the case in principle from Commonwealth v. Thomas Potter Sons & Co.; we therefore conclude that the commonwealth was entitled to judgment.

Judgment affirmed.