## Commonwealth *v.* Real Estate Trust Company, Appellant.

*Taxation—License tax—Real estate brokers—Trust company—Acts of May 27, 1841, P. L. 396, April 10, 1849, P. L. 570, May 15, 1850, P. L. 772, and May 2, 1899, P. L. 184.*

A trust company incorporated under the Act of April 29, 1874, P. L. 73, and the supplements thereto, including the Act of May 9, 1889, P. L. 159, and authorized, among other things to transact the business of buying and selling real estate, is not liable to pay to the state a license tax as a real estate broker under the Acts of May 27, 1841, P. L. 396, April 10, 1849, P. L. 570, May 15, 1850, P. L. 772, and May 2, 1899, P. L. 184.

The words "any individual or copartnership" as used in the Act of May 27, 1841, P. L. 396, do not include corporations. The Acts of April 10, 1849, P. L. 570, and May 15, 1850, P. L. 772, did not extend the provisions of the Act of May 27, 1841, to corporations.

Argued Oct. 16, 1902. Reargued Oct. 7, 1903. Appeal, No. 102, Oct. T., 1902, by defendant, from order of C. P. No. 1, Phila. Co., June T., 1901, No. 2891, overruling demurrer to statement in case of Commonwealth v. Real Estate Trust Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ., on reargument. Reversed.

150 COMMONWEALTH *v.* REAL EST. TR. CO., Appellant.

Statement of Facts—Opinion of the Court. [26 Pa. Superior Ct.

· Assumpsit to recover a license tax.

Plaintiff brought suit in assumpsit against defendant to recover $73.70 for a license tax assessed by the appraisers of mercantile taxes against defendant as a real estate broker in the city and county of Philadelphia during the year 1901, averring in the statement of claim that defendant's sales amounted to $2,300 for the year 1901 upon which the tax was three per cent, or $69.00, the fee to the city $1.25 and the penalty $3.45. In response to defendant's rule for a more specific statement of claim, plaintiff further averred that defendant was liable to the payment of such tax by virtue of the acts of Pennsylvania of May 27, 1841, as subsequently amended by the acts of April 10, 1849, May 15, 1850, and the act of May 2, 1899.

Defendant demurred to plaintiff's statement, assigning as reasons for demurrer : (1) That the acts of assembly of May 27, 1841, April 10, 1849, May 15, 1850, and May 2, 1899, did not authorize the assessment of such tax against defendant; (2) that there was no act of assembly or other authority authorizing the assessment of such tax ; (3) that the defendant was not a real estate broker within the meaning of said acts of assembly.

The court overruled defendant's demurrer and entered judgment for plaintiff, under which damages were assessed at $77.15.

*Error assigned* was in entering judgment for plaintiff.

*John G. Johnson*, with him *H. S. P. Nichols*, for appellant.

*J. Martin Rommel*, with him *Ira Jewell Williams* and *H. L. Carson*, for appellee.

*A. H. Wintersteen*, with him *George Tucker Bispham*, for the Girard Trust Company, amicus curiæ.

OPINION BY PORTER, J., October 17, 1904 :

The appellant was duly incorporated as a trust company under the act of 1874 and the supplements thereto, including the Act of May 9, 1889, P. L. 159, and is authorized, among other things, to transact the business of buying and selling

real estate.    The commonwealth brought this action to recover
the amount alleged to be due from the defendant for license
tax as a real estate broker, and filed a statement averring the
liability of the defendant under the provisions of the Acts of
May 27, 1841, P. L. 396 ; April 10, 1849, P. L. 570 ; May 15,
1850, P. L. 772, and the Act of May 2, 1899, P. L. 184.    The
appellant demurred to the statement and the court below en-
tered judgment in favor of the plaintiff, from which judgment
we have this appeal.    Do the statutes upon which the common-
wealth relies authorize the imposition of the tax in question
upon this defendant?

Statutory authority for the imposition of the tax in question
must be shown.    If there is no act of assembly conferring the
power to impose the tax or license fee sued for in this case,
the plaintiff is not entitled to recover.    It is conceded that if
authority for the tax is not found in one of the acts of assembly
above referred to it does not exist.    The Act of May 2, 1899,
P. L. 184, is entitled " An act to provide revenue by imposing
a mercantile license tax on vendors of or dealers in goods,
wares and merchandise, and providing for the collection of
said tax."    There is nothing in the provisions of that statute
which would warrant the imposition of any tax or license fee
upon real estate brokers; and it can have no bearing upon the
consideration of the question raised by this record.

The Act of May 27, 1841, P. L. 396, is the foundation of
the system for the taxation of stock and exchange brokers ;
section one enacts : " That from and after the first day of July
one thousand eight hundred and forty-one, when any individual
or copartnership residing in the city or county of Philadelphia
shall have paid one hundred dollars (here follow provisions reg-
ulating the amount of the tax in other portions of the state) into
the treasury of the county in which he or she or they shall respec-
tively reside, for the use of the commonwealth, with a view to
the use and exercise of the business or occupation of a stock
broker, the treasurer of the proper county shall thereupon grant
to such individual or copartnership, a commission in legal
form, under the seal of the county, authorizing him, her or
them to purchase and sell as agents, or for the use and benefit
of others in the city or county to be designated in said com-
mission, for such brokerage, commission or other compensation

as may be agreed upon between the parties, any public loan or stock, etc.; for the term of one year from the date of such commission." The second section authorizes the issuing of a commission, upon compliance with similar conditions, to any individual or copartnership, authorizing him, her, or them in like manner to exercise the business and occupation of an exchange broker. The third section authorizes the commission, upon like terms of any individual or copartnership to exercise the business of a bill broker. The fourth section provides for the issuing of new commissions, " for each and every succeeding year during which any individual or copartnership shall continue to use or exercise the business or occupation either of stock broker, exchange broker, or bill broker." This section also provides that in case either of the parties commissioned shall die, or shall remove from and cease to use or exercise the business or occupation of a broker, before the expiration of the term in the commission specified, the benefit of said commission for the unexpired term shall inure to and be continued in his, her, or their legal representative or assignee. Section five provides that " no individual or copartnership, other than those duly commissioned under the provisions of this act, shall use or exercise the business or occupation of a stock broker, an exchange broker, or a bill broker, under a penalty of five hundred dollars for each and every offense." Section six merely imposes a limitation upon the power to make contracts for the future delivery of stocks, etc.; while section seven regulates the manner in which the county treasurer shall make settlement with the auditor-general; neither of those sections have any bearing upon the question of the power to tax. This statute dealt only with the exercise of the business or occupation of a broker, by any individual or copartnership; and prohibited the use or exercise of such business or occupation by any individual or copartnership other than those duly commissioned under the provisions of this statute. The statute authorized the taxation of any individual or copartnership engaged in a particular business, that is, it designated as those subject to the tax the individual, acting for himself, and the combinations of individuals associated as a partnership, engaged in a particular business. There is not in the statute any mention of corporations nor reference to the officers of corporations or companies,

and if it is to be held that corporations can be taxed under this statute, it can only be upon the ground that the term "any individual," as used in the act, included all corporations.    A statute may, in designating those subject to a tax employ terms so comprehensive, or the specific enumeration of the subject of the tax may be so extended by the context of the statute that corporations as well as individuals may be included within its terms, although there may be no specific mention of corporations as such : Commonwealth v. Potter Sons & Co., 159 Pa. 583 ; Commonwealth v. Bailey, Banks & Biddle Co., 20 Pa. Superior Ct. 210.    The legislative intention is, however, in every case the paramount question.    "In the construction of statutes the terms or language thereof are to be taken and understood according to their ordinary and usual signification, as they are generally understood among mankind, unless it should appear from the context, and other parts of the statute, to have been intended otherwise ; and if so, the intention of the legislature whatever it may be ought to prevail.    Therefore, in the case before us, the term "person " being generally understood as denoting a natural person, is to be taken in that sense, unless from the context, or other parts of the act, it appear that artificial persons, such as corporations, were also intended to be embraced : " School Directors v. Carlisle Bank, 8 Watts, 289 ; Saving Fund v. Yard, 9 Pa. 359.    The words "any individual or copartnership " do not usually include corporations.    When used in statutes or common parlance, those terms are ordinarily if not universally accepted as meaning a natural person or an association of natural persons.    We find nothing in the act of 1841 which evinces an intent to include corporations within the expressions used in designating those made subject to the tax. The act does not in express terms, nor by necessary implication, make corporations subject to taxation in the manner here proposed, and the attempt to collect the tax is without authority, unless warrant can be found for it in some other statute : Appeal of Fox & Wife, 112 Pa. 337.

The Act of April 10, 1849, P. L. 570, sec. 18, extended all the provisions of the act of 1841, above referred to, to real estate brokers and to merchandise brokers.    The effect of this was to render such real estate brokers liable to be taxed in the same manner, and under the same circumstances and con-

ditions as were those classes of brokers originally included within the act of 1841; that is, "any individual or copartnership exercising the occupation." The seventeenth section of the act of 1849 required all stock brokers and bill brokers to pay " the additional sum upon each license of fifty per cent, and exchange brokers one hundred per cent, upon the amount which they are required to pay by the act of May 27, one thousand eight hundred and forty-one, entitled ' an act to authorize the licensing of stock brokers, exchange brokers, and bill brokers, and to regulate contracts for the purchase and sales of loans and stocks.'" Let it be conceded for the purposes of this case that this section applies to real estate brokers, which is not, however, clear; the section did not extend the tax to any new class, nor authorize any tax upon persons not included within the provisions of the act of 1841; the only effect of it was to add fifty per cent to the amount to be paid by those who were made subject to the tax under the provisions of the act of 1841.

The Act of May 15, 1850, P. L. 772, provides: " Section 7. That hereafter all stock brokers, bill brokers, exchange brokers, merchandise brokers and real estate brokers, in each and every city and county of this commonwealth, shall be required to pay annually to the use of the commonwealth, for their respective commissions or licenses granted in pursuance of the several acts of assembly now in force relating to the same, upon their annual receipts from commissions, discounts, abatements, allowances or other similar means in the transaction of their business, three per cent." The eighth section regulates the manner of ascertaining and assessing the several brokers aforesaid, according to the amount of business done by them respectively." " Section 9. Nothing in this act shall be held or taken to repeal any obligation, liability, penalty or duty imposed upon any broker by any existing law of this commonwealth, except only so far as the amount of the tax for a commission or license; provided, that in classing said brokers, when an individual or copartnership desires to obtain a commission or license to carry on business at the same time in more than one of the kind of brokers named in the first part of the sixth section of this act, the amount of the annual receipts of said individual or copartnership, in each particular

order, shall be estimated for the purpose of fixing the class as aforesaid, and separate commissions or licenses shall be issued for each kind of brokers as now provided by law." It is contended on behalf of the commonwealth that this statute required the payment of a license tax by all real estate brokers, including corporations, without regard to whether artificial persons had by the several acts of assembly previously in force been required to take out a license. In determining whether it was the legislative intention to extend the tax to new subjects, or merely change the amount of the tax to be paid by those who were already subject to the charge, we must con-- sider the act as a whole and with regard to the nature of the tax, as authorized by pre-existing laws. The act of 1841 made it unlawful for any individual or copartnership to engage in certain classes of brokerage business without having obtained a commission or license, provided a manner in which such individuals or copartnerships might obtain a license, and fixed a schedule of license fees to be paid, varying only with regard to the locality where the business was to be carried on. The act of 1849 increased the schedule of license fees by fifty per cent, and extended the provisions of the act of 1841 to real estate brokers. There was nothing in this pre-existing legislation which made it unlawful for a corporation to engage in business as a real estate broker without having first obtained a license, the right to do so being left wholly dependent upon the powers conferred by its charter. Corporations were not required to take out a commission or license, and were therefore not subject to the tax. The seventh section of the act of 1850 established a new rate of taxation, substituting for the pre-existing schedule of arbitrary fees dependent upon locality, a uniform rate of three per centum upon the receipts from commissions, discounts, etc. The form of the tax was however left unchanged, although it may be said that the effect of the act of 1850 was to make this charge a tax upon income : Banger's Appeal, 109 Pa. 79. It was still collected by the commonwealth as a charge for a license to engage in a certain occupation. The section of the statute in question did nothing more than change the manner in which the amount to be paid for such licenses should be determined. All real estate and other brokers were required to pay annually,

"for their respective commissions or licenses granted in pursuance of the several acts of assembly now in force relating to the same," the amount to be determined under the provisions of this section. The class of persons required to procure a license before engaging in the business was left unchanged; as was the authority from which the license must issue, and the eligibility of the licensee. There is nothing in the seventh section from which it could reasonably be inferred to be the legislative intention to authorize the issuing of a license to a corporation or company not eligible under previous statutes, nor to extend the tax to a class not liable under pre-existing laws. That section does not expressly declare that it shall be unlawful for a real estate broker to engage in business without a license, nor confer authority upon any officer to issue the license; it deals only with the amount which must be paid, " for . . . . licenses granted in pursuance of the several acts of assembly now in force relating to the same." Even if the construction of the seventh section of the act of 1850 were a matter of doubt, all uncertainty is dispelled by a consideration of the ninth section of the same statute. That section must be accepted as a legislative declaration that the legislative purpose was, so far as brokers were concerned, merely to change the amount of the tax for a license; and in the provision for the classification of such brokers we have the licensees referred to as, " any individual or copartnership," the very language employed in the act of 1841, upon which the whole system is founded. The express provisions of these several statutes authorize the issuing of a commission or license as a real estate broker to an individual, a natural person, or copartnership, only and in none of them do we find anything from which can arise an implied authority to issue such a license to a corporation, nor render it subject to a license tax.

The judgment is reversed, and judgment is now entered for the defendant with costs.