# Commonwealth *v.* Banker Brothers Company, Appellant.

*Practice, C. P.—Case stated—Contract—Principal and agent.*

1. Where a case stated avers that one of the parties was an agent of a foreign corporation as shown by a copy of a contract annexed, the court may look into and construe the contract and find that the party named was in fact a purchaser of goods from the foreign corporation, and not its agent as averred in the case stated.

*Taxation—Mercantile tax—Interstate commerce—Purchase of automobile—Principal and agent.*

2. When goods are sent from one state to another for sale, or in consequence of a sale, they become part of its general property and amenable to its laws, provided that no discrimination be made against them as goods from another state, and that they be not taxed by reason of being from another state, but only taxed in the usual way as other goods are.

3. If the mercantile tax imposed by the Act of May 2, 1899, P. L. 184, be regarded as a tax upon property, it is one which the state has power

to impose.   If it be regarded as a tax upon a trade, or the business of vending merchandise, it is also a tax which the state may legally impose.

4.  A foreign corporation manufacturing automobiles entered into a contract with a Pennsylvania corporation doing business in this state, by which the foreign company agreed to sell automobiles to the Pennsylvania company at a certain list price, delivery to be made as soon after orders were received as practicable, payment to be made in cash.   The Pennsylvania company agreed not to sell any other kind of automobiles within a designated territory, and not to sell the foreign company's automobiles outside of such territory.   Payments were to be made either in advance, or by paying drafts with bills of lading attached.   The contract could be terminated by either party upon ten days' notice.   There was nothing in the agreement which authorized the Pennsylvania company to bind the foreign company by any engagement with a third party.   *Held* (1), that the agreement was a contract for the sale of automobiles, and did not create between the parties the relation of principal and agent; (2) that upon the payment of sight drafts the automobiles became the absolute exclusive property in Pennslyvania of the purchasing company; and (3) that the Pennsylvania company was a retail vendor of automobiles, and as such subject to the mercantile tax imposed by the Act of May 2, 1899, P. L. 184.

Argued April 28, 1908.   Appeal, No. 181, April T., 1908, by defendant, from judgment of C. P. No. 4. Allegheny Co., First Term, 1908, No. 796, for plaintiff on case stated in suit of Commonwealth v. Banker Brothers Company.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Case stated to determine liability for a mercantile tax.   Before CARNAHAN, J.

The opinion of the Superior Court states the case.

*Error assigned* was in entering judgment for plaintiff on the case stated.

*Harvey A. Miller* and *E. J. Kent*, for appellant.—Upon a case stated, the court cannot go outside of its terms for facts; neither can it assume facts by way of inference: Com. v. Howard, 149 Pa. 302; Northampton County v. Easton Pass. Ry. Co., 148 Pa. 282.

The automobiles were articles of interstate commerce: Lyng

v. State of Michigan, 135 U. S. 161 (10 Sup. Ct. Repr. 725); Robbins v. Shelby County Taxing District, 120 U. S. 489 (7 Sup. Ct. Repr. 592); Brennan v. Titusville, 153 U. S. 289 (14 Sup. Ct. Repr. 829); Welton v. Missouri, 91 U. S. 275; In re Flinn, 57 Fed. Repr. 496; Stoutenburgh v. Hennick, 129 U. S. 141 (9 Sup. Ct. Repr. 256); In re Tinsman, 95 Fed. Repr. 648; Ficklen v. Shelby County Taxing District, 145 U. S. 1 (12 Sup. Ct. Repr. 810).

*George H. Calvert,* with him *James M. Magee* and *Donald Thompson,* for appellee.—The appellant fails to distinguish between, and confuses, what constitutes the facts and the legal conclusions which follow and must be inferred from the facts as agreed upon.  That this is permissible there can be no doubt: Carbon Spring Water Ice Co. v. Hawk, 29 Pa. Superior Ct. 13; Nellis v. Coleman, 98 Pa. 465; Addyston Pipe & Steel Co. v. Corry City, 197 Pa. 41.

The defendants were dealers: Norris Bros. v. Com., 27 Pa. 494; Com. v. Campbell, 33 Pa. 380; Com. v. Vetterlein, 29 Pa. Superior Ct. 294.

Although the tax or license is based upon the sale of the goods, it is in fact a tax upon the goods themselves, and therefore governed by the same rules: Brown v. Maryland, 25 U. S. 419; Welton v. Missouri, 91 U. S. 275; Brennan v. Titusville, 153 U. S. 289 (14 Sup. Ct. Repr. 829); Kehrer v. Stewart, 197 U. S. 60 (25 Sup. Ct. Repr. 403); Brown v. Houston, 114 U. S. 622 (5 Sup. Ct. Repr. 1091); Emert v. Missouri, 156 U. S. 296 (15 Sup. Ct. Repr. 367); American Steel & Wire Co. v. Speed, 192 U. S. 500 (24 Sup. Ct. Repr. 365); Robbins v. Shelby County Taxing District, 120 U. S. 489 (7 Sup. Ct. Repr. 592); New Castle v. Cutler, 15 Pa. Superior Ct. 612; Meyer, Jossen & Co. v. Mobile, 147 Fed. Repr. 843; Diamond Match Co. v. Ontonagon, 188 U. S. 82 (23 Sup. Ct. Repr. 266).

Opinion by Porter, J., February 26, 1909:

The parties agreed upon a case stated in the court below, under the provisions of which this is to be considered as an action of assumpsit brought by the commonwealth to recover of the

defendant company the taxes upon its sales of merchandise as a retail dealer, under the provisions of the Act of May 2, 1899, P. L. 184, and, also, for the license tax upon the defendant as a merchandise broker, under the provisions of the Act of April 14, 1905, P. L. 161. The court below, being of opinion that the defendant was a retail vender of goods, wares and merchandise, as defined by the act of May 2, 1899, entered judgment against the defendant in the sum of $354, and refused to enter judgment for the tax upon defendant as a merchandise broker. The defendant appeals. The only question is whether certain sales made by the defendant were subject to the tax imposed by the act of May 2, 1899. The appellant contends that the imposition of the tax, in so far as based upon the sales in question, was in violation of that provision of the constitution of the United States vesting in congress the "power to regulate commerce with foreign nations and among the several states."

The counsel for appellant contend in their brief, as they did upon the oral argument, that the court below fell into error in considering all the facts which had been embodied in the case stated. The case stated contained among other agreements the following, viz.: "That Banker Brothers Company, defendant above named, is a corporation organized and existing under the laws of the State of Pennsylvania, having its principal office in the City of Pittsburg, and is engaged, inter alia, in the business of selling an automobile known under the name of the Pierce Great Arrow, which automobile is manufactured in the City of Buffalo, State of New York, by the George N. Pierce Company, a corporation of the State of New York, located in the city and State aforesaid, and the defendant is the exclusive agent and representative of the said George N. Pierce Company for the Pittsburg territory, as specifically described and mentioned in the contract entered into between the said George N. Pierce Company and the defendant, a copy of which is hereto attached, made a part hereof and marked exhibit 'A.' That the said contract, marked exhibit 'A,' is the genuine existing contract between the George N. Pierce Company of Buffalo, N. Y., and the defendant company, and is the basis of the existing relations and dealings between the said parties thereto, and

of the right of the said defendant to sell said automobile in said Pittsburg territory." The learned counsel argue that this particular part of the written agreement, as to facts in the case stated, involved a conclusive agreement that the relation between the Pierce company and the defendant was that of principal and agent, and that the defendant company was nothing more to its customers than the agent for the George N. Pierce Company, and that it was not in the power of the court below to go beyond this fragment of the case stated and consider any other fact therein agreed upon or the contracts thereto attached and made part thereof, in determining what was the actual character of the business involved in the sales made by the appellant within the state of Pennsylvania. In thus attempting to escape from the legal results of the other facts and the contracts which had been embodied in the case stated and to confine the inquiry to a fragment of the agreement, the learned counsel seem to lose sight of the fact that, while the fragment upon which they rely does state that "the defendant is the exclusive agent and representative of the George N. Pierce Company for the Pittsburg territory," it does not state that the sales in question were made as the agent of the Pierce company, nor does an implication that the sales were so made necessarily arise from the facts stated in that part of the agreement upon which they seem to rely. The contract exhibit "A," which was attached to and made part of the case stated, was thus incorporated for the purpose of showing the relations and dealings between the defendant corporation and the George N. Pierce Company and the character in which the defendant corporation made sales of automobiles in the Pittsburg territory. It was the duty of the court below, as it is of this court, to examine that contract and consider all the facts agreed upon in the case stated in order to properly determine the real character of the sales made by this Pennsylvania corporation, in the state of Pennsylvania and to citizens of Pennsylvania.

The contract between the appellant corporation and the Pierce company is one which in its form, purpose and effect is not unusual in modern times. The Pierce company, a manufacturing corporation of the state of New York, under the pro-

visions of this agreement contracted to sell automobiles to the defendant, a Pennsylvania corporation, at prices for each type of automobile twenty per cent below the "list price" for the respective types, deliveries to be f. o. b. Buffalo, as soon after orders for delivery were from time to time received as practicable and as the prior orders of other parties and the Pierce company's business would permit; payment to be made in cash. The Pierce company agreed not to enter into any contract with any other party for the sale of its automobiles within the designated territory and not to solicit orders for automobiles within such territory during the existence of the agreement; and it further agreed to grant credit to the Pennsylvania corporation for parts of automobiles and repairs, the same to be paid for not later than the fifteenth day of the month succeeding that in which the credit was incurred. The defendant corporation contracted to use due diligence to further the sale of Pierce automobiles within the designated territory, not to sell such automobiles outside of the said territory without permission, and not to sell or offer for sale any cars of the current year's model at less than the list price, with freight charges added. It agreed to pay for all such automobiles "either by cash payment in advance or by accepting and paying drafts with bills of lading attached at sight on presentation." It agreed to pay for all parts of machines and repairs for which credit was granted monthly, not later than the fifteenth day of the month succeeding. The contract contained a provision that it might be terminated by either party upon ten days' notice, and "In case of cancellation of this agreement the second party may elect to take or not any orders then recorded and accepted by the first party, . . . . Such cancellation, however, shall not be construed to relieve the second party of any indebtedness incurred." The contract does not contain one word which authorizes the defendant company to enter into any contract on behalf of or bind the Pierce company by any engagement with any third party. This was a contract for the sale of automobiles and did not create between the parties the relation of principal and agent. The Pierce company, a manufacturer, secured by this contract a responsible purchaser for the product

of its factory and made it to the interest of that purchaser to further the sale of such product, within the designated territory, by a liberal discount from the list price, thus enabling the purchaser to sell at a profit. The contract secured to the purchaser, this defendant, a clear field for the sale of the goods that he bought, through the operation of the covenant that the manufacturer would not sell to others within the same territory. When this defendant, a Pennsylvania corporation, paid the sight draft with bill of lading attached and took possession of an automobile when it arrived, that car, then in Pennsylvania, became the absolute exclusive property of this Pennsylvania corporation. The Banker Brothers Company could then have sold such cars to any person at any place, and for any price that to them was satisfactory; and the purchaser would have taken a good title. The Pierce company might have canceled their contract with the defendant, in case the latter sold an automobile at less than the list price or outside of the designated territory, in violation of the covenants of the contract, or in case they were able to show actual damage they might possibly have maintained an action for a breach of the contract, but the defendant company could have made a valid sale which would have passed the title to the automobile.

Having by the above-recited contract made sure of a source of supply the defendant company was in position to carry on the business of selling automobiles. The case stated sets forth the manner in which such sales were made. The sales were solicited and made by and through demonstrations of said machines by means of demonstrating cars of the same type as that offered for sale, owned and used and always on hand for such purpose only, by the defendant company. The defendant company does not solicit orders and does not make sales outside of the territory designated by this contract with the Pierce company, and sells only at the "list price." When a customer determines to buy a machine he signs an order upon the form exhibit "B," attached to and made part of the case stated. This order is addressed to Banker Brothers, the defendant corporation, and in it the purchaser agrees to buy an automobile of a type, style and finish designated in the order, at the list

price, f. o. b. factory; and to pay in cash an amount then agreed upon and the balance upon delivery of the car to him. The order is then accepted by Banker Brothers Company and constitutes the contract between the defendant corporation and those to whom they make sales. The defendant company in this contract of sale covenants in its own right. The contract contains no suggestion that the defendant corporation is acting as the agent for the Pierce company or any other person or corporation, nor does it contain anything from which an inference could be drawn that it was in the matter acting as an agent or representative. The purchaser becomes bound to Banker Brothers only and acquires no rights, under this contract, against any other person or corporation. In case the automobile is not delivered to the customer according to the terms of the contract his only remedy would be against Banker Brothers Company, this defendant corporation. In case a purchaser declined to accept an automobile when it was tendered according to the terms of the contract, the only person who, under this contract, would have a remedy against such purchaser would be this defendant. These sales are sales by the defendant corporation, in its own right, and not as the agent of the Pierce company.

When the defendant company had thus secured a contract for the sale of an automobile, it forwarded to the Pierce company an order for a car of the type desired, together with the cash payment; the Pierce company shipped the car, when ready, consigning it to the defendant company with bill of lading and sight draft on defendant company attached for the balance of the price, twenty per cent less than the list price, at which the defendant company was entitled to the car under the terms of its contract with the Pierce company. The defendant company paid the sight draft and took possession of the car, and then delivered it to the purchaser and collected from him the balance of the amount, which under his contract he agreed to pay upon such delivery.

The facts set forth in the case stated clearly establish that the defendant corporation was a dealer, which bought automobiles from a factory located in New York, that the goods were

by the manufacturer shipped to the defendant company which paid for them before receiving them into its possession, and which under the terms of its contract and the manner in which the shipment was made was required to pay for them before it was entitled to possession. When the defendant company had paid for and obtained possession of a car it in turn delivered it to the purchaser, as required by its own contract with that purchaser, and upon such delivery it collected from the purchaser the money which was its own due. The defendant company is, so far as this particular business is concerned, one who buys to sell again, and is, within the meaning of the act of 1899 a retail vender of merchandise and subject to the tax imposed by that act on such business. The sale made by the Pierce company to the defendant corporation in view of the manner in which the contract is executed, involves interstate commerce, and down until the time the automobile comes into the possession of the defendant company in Pennsylvania the transaction is within the protection of the constitution of the United States. The sales which the Pennsylvania corporation makes to citizens of Pennsylvania and which are completed by a delivery to the purchaser in Pennsylvania, of cars which had become the property of the Pennsylvania corporation, are subject to the taxing power of the state.

"When goods are sent from one state to another for sale, or in consequence of a sale, they become part of its general property and amenable to its laws; provided that no discrimination be made against them as goods from another state, and that they be not taxed by reason of being brought from another state, but only taxed in the usual way as other goods are:" Robbins v. Shelby County Taxing Dist., 120 U. S. 489; Brown v. Houston, 114 U. S. 622; Emert v. Missouri, 156 U. S. 296; American Steel & Wire Co. v. Speed, 192 U. S. 500; Diamond Match Company v. Ontonagon, 188 U. S. 82; General Oil Company v. Crain, 209 U. S. 211. If, therefore, the tax imposed by the act of 1899 be regarded as a tax upon property, it was one which the state had power to impose. Should the tax be regarded as a tax upon a trade, or the business of vending merchandise, as it in Pennsylvania has been held to be, Knisely v.

Cotterel, 196 Pa. 614; Commonwealth v. Bailey Banks, & Biddle Co., 20 Pa. Superior Ct. 210, then the power of the state to impose such a tax is sustained by the decision of the supreme court of the United States in Ficklen v. Shelby County Taxing Dist., 145 U. S. 1.

The judgment is affirmed.